# Dowling *v.* Blackman.

*Action on Promissory Note, by Payee against Maker.*

| 70 | 303 |
|----|-----|
| 93 | 539 |
| 70 | 303 |
| 96 | 340 |
| 70 | 303 |
| 110 | 334 |
| 70 | 303 |
| 125 | 547 |
| 70 | 303 |
| 126 | 306 |
| 70 | 303 |
| 129 | 514 |
| 70 | 303 |
| e139 | 593 |

1. *Construction of conditional note; implied stipulations where contract is in writing.*—As to the construction of the conditional note, on which this suit is founded, and which was given in consideration of the payee's interest in a contract with the United States for carrying the mail on a specified route, and made subject to two express conditions, the court adheres to the principles announced on the former appeal (63 Ala. 304-7), and holds that these express conditions can not be extended by implication.

2. *Amendment of complaint.*—Where the original complaint contains a single count, in the form prescribed for an action on a promissory note by payee against maker (Code, p. 701, Form No. 4), an amended complaint, setting out the instrument in full, in form a promissory note subject to express conditions, and averring that neither of the conditions has happened, is allowable under the statute (Code, § 3156), not being the substitution of an entirely new cause of action.

3. *Same; statute of limitations.*—The amendment in such case, when allowed, relates back to the day on which the original complaint was filed, and can not be defeated by a plea of the statute of limitations.

4. *Presumption as to conclusiveness of accounting.*—When two persons account with each other, and one pays the balance found against him, the presumption is, that the settlement includes all items of debit and credit then existing between them and over-due; but there is no such presumption as to a contingent or conditional liability which had not then become absolute.

5. *Conclusiveness of official acts of public officers, when collaterally assailed.*—The regularity of the official acts of the post-office department of the United States government, in reducing the compensation on a particular mail route and afterwards restoring it, can not be collaterally assailed for fraud, in an action between third persons; as, where the action is founded on a written promise to pay a specified sum of money in consideration of the payee's interest in the contract for carrying the mail on that route, subject to the express condition that the compensation is not reduced during the term of the contract.

6. *Redundant evidence.*—The erroneous admission of redundant or superfluous evidence, to establish a fact which is not disputed, is, at most, error without injury.

[Dowling v. Blackman.]

APPEAL from the Circuit Court of Dale.

Tried before the Hon. H. D. CLAYTON.

This action was brought by Thomas G. Blackman, against John W. Dowling, and was commenced on the 20th August, 1874. The original complaint contained but a single count, claiming $200 "due by promissory note made by defendant on the 29th day of December, 1869, and payable to plaintiff on the 1st day of January, 1871, with the interest thereon." On the second trial of the cause, at the March term, 1881, the plaintiff amended his complaint, by leave of the court, by adding a special count on a written contract signed by the defendant, which was set out, in these words: "Ozark, Ala., Dec. 29, 1869. By the first day of January, 1871, I promise to pay to Thomas G. Blackman two hundred dollars, for his part of the mail contract on route No. 6,789, in Alabama; on the condition, that said route is not abolished, nor the pay by the United States is not diminished during the term of said contract; in which event, such pay to be in *pro rata* with that I may receive from the United States." The amended complaint, after setting out this instrument, averred "that neither of the contingencies mentioned in said contract has happened; and plaintiff further avers that the Government did pay for carrying the mail over said route, and that defendant has failed to pay plaintiff for his interest in said contract, whereby plaintiff is damaged to the amount of $200," &c. The defendant demurred to the amended complaint, on the ground that there was not a sufficient assignment of a breach of the condition of the contract; and his demurrer having been overruled, he then pleaded, "in short by consent," as the bill of exceptions states, the general issue, and, to the amended complaint, the statutes of limitation of three and six years; but the judgment-entry recites, that the cause was tried "on issue joined on the plea of the general issue."

On the trial, when the plaintiff offered in evidence the written contract above set out, the defendant objected to its admission, and moved to exclude it from the jury, on the ground that it was not a promissory note, but a conditional contract, and was therefore variant from the instrument at first declared on. The court overruled the objection, and the defendant excepted. The defendant then testified, in his own behalf, to the following facts, in substance: That the contract for carrying the mails on the route specified was obtained by himself, plaintiff, and one Seaborn Hughes, through the agency of Bryan Tyson, of Washington, D. C., who became the nominal contractor for their benefit, as they were unable to take the "iron-clad oath" required by the laws of the United States; they becoming his sureties, or guarantors, and agreeing to do the work, and to

[Dowling v. Blackman.]

allow Tyson five per cent. for his services in procuring the contract. The term of the contract was from July, 1867, to June 30th, 1871; and the yearly compensation was $1,000, payable quarterly. The three parties named were equally interested in the contract at first; but Hughes soon sold out his interest to the defendant, who afterwards bought the plaintiff's interest also, as shown by the written contract. The route extended from Louisville to Geneva, by way of Brundidge. "Before plaintiff sold his interest to me," defendant testified, "the route was extended to Clayton, and the pay increased $123.40 *per annum* on the original contract. After I purchased his interest, the route was discontinued to Brundidge, the length of the route decreased fifteen miles, and the pay diminished $185.00 *per annum*, which was subsequently made to take effect from the beginning of the contract. This diminution amounted to $740, which was not paid to any one during the contract, and has never been paid to me at all." The defendant read in evidence also, without objection, the deposition of J. J. Martin, "Auditor of the Treasury for the Post-Office Department," showing the various orders relating to said route during the term covered by the contract; the effect of which orders was, that the compensation was reduced as stated by the defendant, but the reduction was remitted by an order made on the 16th August, 1872; and the amount thus remitted, $611.33, was paid to said Tyson, as the witness testified, on the 18th October, 1872. The defendant read in evidence, also, against the objection of the plaintiff, a statement of said Tyson's account as the contractor on said route, showing the payments made to him, which was made out and certified by J. J. McGrew, "Auditor of the Treasury for the Post-Office Department;" and the plaintiff reserved an exception to its admission.

There was a settlement between the parties in March, 1872, in reference to which the defendant thus testified: "I was garnisheed by W. H. Barrow upon a suit he had pending against plaintiff; and he and I got together, and made a settlement of all our mail matters, when I was found due him $5.80, which I paid to said Barrow on plaintiff's order. This was in March, 1872, long after the note fell due. I told plaintiff that I would not pay the note sued on, because I lost so much on the contract, unless I should afterwards receive the amount of the deduction; and this was agreed to by the plaintiff, and fully understood between us." In reference to this settlement, the plaintiff thus testified: "I was sued by Barrow, for, perhaps, near $50. At the time defendant and I considered the matter of the garnishment, it was ascertained that the balance due me was $5.80; for which I gave Barrow an order, and I presume it was paid. This was not intended nor understood to be an

[Dowling v. Blackman.]

extinguishment of said note. I did not then claim that defendant owed me any thing more, because the amount of the diminution on said route had not then been remitted; but it has since, as I understand. Defendant told me, that if he ever collected the money for such arrearages, he would pay me; and this was fully understood and agreed between us at the time of our settlement in March, 1872. I did not claim any more on the note, until I learned that the money had been paid by the United States."

On all the evidence adduced, the substance of which is above stated, the defendant requested the following charges, which were in writing:

" 1. If the jury believe, from the evidence, that the money promised in the contract offered in evidence became due more than six years before the filing of the amended complaint, they must find for the defendant."

" 2. If the jury believe, from the evidence, that after said contract became due, and before the commencement of this suit, there was an accounting between the parties, and all the matters of indebtedness due from the defendant to the plaintiff were ascertained, and were paid by the defendant, then the jury must find for the defendant."

" 3. That if the jury believe, from the evidence, that the carriers on said route No. 6,789 failed to carry the mail over said route by way of Brundidge, thereby saving to themselves fifteen miles travel; and that the contract and schedule required the mail to be carried by way of Brundidge; and that the Post-Office Department legally and properly made a reduction of the pay, because of such failure, and afterwards, without authority of an act of Congress, or a rule of the said department made in pursuance thereof, rescinded the order making such reduction, and paid to Tyson the amount deducted; that the latter action was a fraud upon the said defendant, and unless the defendant received the money thus paid to Tyson, or some portion thereof, he is not liable to the plaintiff on that account under their said contract."

" 4. If the jury believe, from the evidence, that after the maturity of the note or contract sued on, the plaintiff and defendant had a settlement of all matters between them, arising out of their contracts with each other for carrying the mails; and that $5.80 was ascertained to be all that was due from defendant to plaintiff, on said note or otherwise, at that time, and was paid by defendant to plaintiff; and that any thing subsequently transpired—revocation of orders reducing pay; payment to Tyson, or otherwise—giving plaintiff a right of action against defendant arising out of said written contract, on the conditions therein; then, plaintiff could only recover on a count

[Dowling v. Blackman.]

for money had and received, and, under the pleadings and proof, the jury must find for the defendant."

"5. If the jury believe, from the evidence, that the pay was diminished by the United States during the term of said contract for carrying the mail on said route; and that the diminution continued until October, 1872, long after the expiration of said contract, and was then restored, and paid to Tyson, the contractor, and not to defendant; then the defendant is not liable for the full amount of the note or contract sued on."

The court refused each of these charges, and the defendant excepted to their refusal; and he now assigns their refusal as error, with the other rulings above stated.

J. M. CARMICHAEL, and W. C. OATES, for appellant.

W. D. WOOD, and MILLIGAN & BLACKMAN, *contra.*

SOMERVILLE, J.—We are not disposed to depart from the principles announced in this case when here before on appeal, as reported under the title of *Blackman v. Dowling*, 63 Ala. 304. We adhere to these principles, without further discussion of them.

2. The amendment of the complaint, authorized by the court, was properly allowed. "The only limit to the right of amendment, under our statutes, is, that there must not be an entire change of parties, nor the substitution of an entirely new cause of action."—*Long v. Patterson*, 51 Ala. 414.

3. Nor was the new count, as substituted by the amendment, barred by the statute of limitations. It set up no new claim or matter, but simply varied the description of an instrument already in suit. Where such is the case, the amendment, when allowed, relates back to the date of filing the original complaint. The following decisions of this court fully sustain the action of the court in allowing the amendment: *Stringer v. Waters*, 63 Ala. 361; *King v. Avery*, 37 Ala. 169; *Reed v. Scott*, 30 Ala. 640; *Langford v. Scott*, 51 Ala. 557; *Long v. Patterson*, *Ib.* 414.

4. The accounting between Dowling and Blackman, after the service of the writ of garnishment on the former, at the suit of Barrow, would presumptively include all items of debt and credit existing at that time between them, and then overdue. The evidence is free from conflict, showing that the present cause of action had not then accrued against the appellant, in Blackman's favor, the amount claimed being payable on a contingency which had not then transpired.

5. We can not assume that there was any unfairness, or

[Flournoy & Epping·v. Lyon & Co.]

fraud, in the transactions between Tyson and the Post-Office Department of the general government. The regularity of the official action reducing Tyson's pay as a mail-route contractor, and the subsequent rescinding of this order so as to restore such pay, can not be collaterally assailed in this suit. Besides, if Tyson collected such compensation under color of his contract with the government, he would be liable to account for the amount to Dowling; and being the only person to whom the money could be legally paid, he was, of necessity, *pro hoc vice*, the agent of Dowling for its collection.—*Blackman v. Dowling*, 63 Ala. 304.

6. The admission of the account between the government and Tyson, as certified by the Auditor of the Post-Office Department, was not a reversible error. It was admitted, very clearly, but for one purpose; and that was, to show the payment to Tyson of the money here in controversy,—a fact which is no where disputed by either party, but is entirely uncontroverted. The admission of such redundant evidence is not a ground sufficient to authorize a reversal. It is superfluous, and, at most error, without injury.—*Railroad Co. v. Sanford*, 36 Ala. 703.

We discover no error in the rulings of the Circuit Court, and its judgment is affirmed.